IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:21-cv-02888-RMR-KAS

BRITTANY FRIAR,

    Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

    Defendant.

_____

# ORDER
_____

This matter is before the Court on Defendant's Motion for Partial Summary Judgment, ECF No. 94. The matter is fully briefed and ripe for review. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons that follow, Defendant's Motion is DENIED.

## I.    BACKGROUND

This is an insurance dispute between Plaintiff Brittany Friar and Defendant Safeco Insurance Company of America ("Safeco").[1] Plaintiff seeks underinsured motorist ("UIM") benefits under an insurance policy issued by Safeco.

---

[1] The background is taken from the parties' chart of undisputed material facts filed before the Intent to File Motion for Summary Judgment hearing, ECF No. 92, and the parties' briefings and appendixes on Summary Judgment, ECF Nos. 94-95. In its Motion for Summary Judgment, Defendant listed ten additional facts that do not appear in the chart submitted by the parties. ECF No. 94 ¶¶ 14 – 23. In her Response Plaintiff used over 15 pages of her brief to address Defendant's "undisputed facts" in chart form. ECF No. 95 at 3-19. In its Reply brief, Defendant asks the Court not to consider Plaintiff's Response because it is ten pages over

Plaintiff was injured in a car accident caused by an underinsured motorist on August 23, 2019. Plaintiff resolved her claim against the at-fault driver for the at-fault driver's insurance policy limit of $100,000. At the time of the crash, Plaintiff had in effect a policy of insurance through Defendant which provided for UIM benefits in the amount of $250,000 per person. The policy required the insured to "[s]ubmit, as often as [Safeco] reasonably require[s]: to physical examination by physicians [Safeco] select[s]." ECF No. 94-1 at 26.

On October 13, 2020, Plaintiff's counsel sent a demand letter to Defendant. ECF No. 94-2 1-14. In the letter, Plaintiff represented her medical expenses as of October 13, 2020, totaled $17,065.80. *Id.* at 12. The letter listed 22 injuries allegedly sustained by Plaintiff in the motor vehicle accident, including but not limited to, traumatic brain injury, a T1 compression fracture, and a disc herniation at the levels of c5-c6. *Id.* at 3-4. On or about November 3, 2020, Defendant's claims adjuster, Sarah Bark,[2] conducted an interim evaluation of Plaintiff's claim, considering all the information received to date. Bark "accepted all the medical bills submitted ($17,065.80) and added an estimated amount for general damages, including pain and suffering in the amount of $105,000." ECF No. 94-2 at 16. Bark then offset the amount by the $100,000 Plaintiff received from her

---

the Court's limit of twenty pages and that any alleged disputed facts by Plaintiff should not be considered because "Plaintiff did not include a 'Statement of Additional Disputed Facts' or comply with the Court's Practice Standards related to the same." ECF No. 96 at 2. However, the "Statement of Additional Disputed Facts" required by Uniform Civ. Practice Standard 7.1D(b)(5) does not apply to cases pending before this Court. The parties should have relied on the chart of undisputed material facts filed at ECF No. 92. The Court will consider the facts presented by the parties in the briefings because both parties have had the opportunity to respond and did so. *See* ECF No. 95, 96.

[2] Sarah Bark is addressed as Sarah Jones in the correspondence between the parties from 2020 and 2021. *See* ECF Nos. ECF No. 94-2, 95-1. It appears Sarah Jones changed her last name to Bark since then. *See* ECF No. 92.

2

settlement with the at-fault driver. Defendant issued Plaintiff a check for the remainder, $22,065.08. In the same letter, Bark requested that Plaintiff attend an orthopedic examination with Dr. Michael Janssen and a neuropsychological examination with Dr. Hal Wortzel.

On November 9, 2020, Plaintiff provided Defendant with a report from Dr. Dilaawar J. Mistry and asked Defendant to share the report with its experts. ECF No. 95-4. Dr. Mistry concluded, among other things that Plaintiff "has prolonged cognitive, physical, and psychological symptoms from complications of the injuries caused by the [motor vehicle accident] on August 23, 2019." *Id.* at 2. On December 10, 2020, Dr. Janssen examined Plaintiff. Dr. Janssen provided Defendant three expert reports dated December 10, 2020, February 16, 2021, and August 23, 2021. Dr. Janssen concluded, among other things, that Plaintiff's alleged neck and cervical spine problem "[are] a pre-existing condition that was not caused by or accelerated by the motor vehicle accident." ECF No. 94-5 at 14. On February 19, 2021, Dr. Wortzel examined Plaintiff. Dr. Wortzel provided Defendant with an expert report dated February 28, 2021. Dr. Wortzel concluded, among other things, that Plaintiff did not sustain any concussion/mild traumatic brain injury as a result of the motor vehicle accident. *See id.* at 54-55.

On February 23, 2021 (ECF No. 94-2 at 18-21), September 16, 2021 (ECF No. 95-1 at 19-31), and July 31, 2023 (ECF No. 95-3) Plaintiff's counsel sent letters to Defendant raising concerns about Dr. Janssen and Wortzel's examinations. It is undisputed that in the years leading up to the car accident, Plaintiff was treated for head and neck injuries at various times. For example, in April 2010, Plaintiff was thrown from a horse. In

3

December 2013, Plaintiff was treated for headache and neck pain. In October 2015, Plaintiff was treated for headaches, neck pain, and back pain. In March 2019, Plaintiff attended physical therapy for shoulder pain after falling down the stairs in December 2018. Plaintiff alleges that Dr. Janssen failed to address whether Plaintiff suffered any neck symptoms before the accident. Plaintiff's counsel also raised concerns about the biases of Dr. Janssen and Dr. Wortzel and included testimonial evidence from both that Plaintiff's counsel alleges demonstrates their biases.

On March 22, 2021, Jones sent a letter to Plaintiff stating the reports from Dr. Janssen and Dr. Wortzel supported the amount issued after her interim evaluation of Plaintiff's claim. ECF No. 94-2 at 22-23. In the same letter, Defendant agreed to mediation. On June 25, 2021, Plaintiff notified Defendant that she planned to have bi-level cervical fusion and decompression surgery on October 7, 2021, at the cost of $93,237.09. ECF No. 94-2 at 24. As of June 21, 2024, Plaintiff had not undergone the surgery. ECF No. 95 at 15. On June 29, 2021, the parties attended pre-litigation mediation, but they could not reach a resolution. *Id.* at 14. On August 20, 2021, Plaintiff requested Defendant tender the remainder of Plaintiff's policy limits. ECF No. 94-2 at 27. On August 23, 2021, Bart declined Plaintiff's request, stating that the expert reports from Drs. Janssen and Wortzel supported her evaluation of the claim. *Id.* at 28.

On October 6, 2021, Plaintiff filed this lawsuit in Larimer County District Court. On October 27, 2021, Defendant removed the action to this Court. Plaintiff has raised claims for breach of contract, undue delay and denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and 1116, and bad faith. *See* ECF No. 5. Defendant seeks summary

4

judgment on Plaintiff's statutory bad faith claim under Colo. Rev. Stat. §§ 10-3-1115 and 1116 and Plaintiff's common law bad faith claim.

## II.     LEGAL STANDARD

To succeed on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine dispute of material fact; and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When analyzing a motion for summary judgment, the court must "look at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). However, the nonmoving party may not simply rest upon its pleadings at this stage; rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249.

### III.   ANALYSIS

A federal court sitting in diversity applies the substantive law of the forum state. *Bass Tr. Of Andy Bass Fam. Tr. v. Tour 18 of Rose Creek, LP*, 795 F. App'x 613, 619 (10th Cir. 2020). Both parties agree that Colorado law applies here.

#### A.   Statutory Bad Faith

Defendant seeks summary judgment to the extent that Plaintiff has alleged a claim for statutory bad faith. Pursuant to Colo. Rev. Stat. § 10-3-1115, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." An insurer's delay is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." *Id*. By their nature, insurance bad faith claims present questions of fact unsuitable for resolution on summary judgment except in limited circumstances. "[W]hen there are no genuine issues of material fact, reasonableness may be decided as a matter law." *Anderson v. Am. Nat'l Prop. & Cas. Co.*, No. 17-CV-03016-KMT, 2020 WL 406077, at *6 (D. Colo. Jan. 23, 2020) (quoting *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759, *as modified on denial of reh'g* (Colo. App. 2010)). Therefore, whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for a jury. *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1003 (D. Colo. 2020). This case does not present an exception to that rule.

Defendant argues that it is entitled to summary judgment because its actions were reasonable in this case as a matter of law. Specifically, Defendant points to its reliance on assessments made by its medical experts. Plaintiff argues that, when viewing the

6

evidence in the light most favorable to her, a reasonable jury could conclude that Defendant acted unreasonably when it relied on reports from biased evaluators. Plaintiff has come forward with evidence, through prior testimony, suggesting that Drs. Janssen and Wortzel's evaluations were not performed in good faith and that Jones unreasonably relied on their opinions that Plaintiff's head, neck, and back issues were pre-existing and unrelated to the accident. Plaintiff put forth an expert opinion from Dr. Mistry that her injuries were caused by the accident. "[C]ompeting expert opinions present the classic battle of the experts and it is up to a jury to evaluate what weight and credibility each expert opinion deserves." *Thompson*, 457 F. Supp. 3d at 1005. Viewing the facts in the light most favorable to Plaintiff, the Court finds that genuine issues of material fact exist concerning whether Defendant's reliance on the experts was reasonable. Plaintiff has also come forward with evidence showing there is a genuine issue of material fact concerning the reasonableness of Defendant's conclusion that Plaintiff's head, neck, and back issues are not related to the accident.

Defendant also argues that its coverage decision was reasonable because "the value of Plaintiff's general damages was a reasonable dispute." ECF No. 94 at 16. In this case, there is no question that the parties disagree over the value of Plaintiff's UIM claim. However, Defendant "cannot rely on the mere fact that the claim was fairly debatable in order to prove that it acted reasonably as a matter of law." *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1206 (D. Colo. 2022) (citing *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 989-90 (Colo. App. 2015)). Rather, "the question is whether a reasonable insurer under similar circumstances would have denied or delayed

7

payment of the claim. The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards." *Thompson*, 457 F. Supp. 3d at 1003. The reasonableness of Defendant's conduct in this case must be evaluated in light of industry standards. Here, both parties put forth industry experts to offer opinions as to whether Defendant's investigation of Plaintiff's UIM claim violated industry standards. *See* ECF No. 95 at 19. Therefore, the Court finds that a genuine issue of material fact exists concerning whether Defendant met those industry standards. This is an issue which should be determined by a jury.

Plaintiff also faults Defendant for omitting evidence she has provided over the past three and a half years, "including evidence showing that [Plaintiff's] economic damages total over $220,000." ECF No. 95 at 13-14. The evidence Plaintiff is referring to was provided during litigation. On July 31, 2023, Plaintiff provided Defendant an expert report projecting Plaintiff's future medical costs, estimating Plaintiff would likely incur over $200,000 in future medical needs. ECF No. 95-3. On December 15, 2023, Plaintiff supplemented her Fed. R. Civ. P. 26(a)(1) disclosures with updated medical expenses in the amount of $55,740.41. ECF No. 95-2. The Court does not include this supportive evidence introduced during the litigation in determining whether there is a general dispute of material fact as to the reasonableness of Defendant's conduct during its pre-litigation evaluation of the claim. *See Wahlert v. Am. Standard Ins. Co. of Wisconsin*, 173 F. Supp. 3d 1187, 1196 (D. Colo. 2016) ("However, while the 'the duty of good faith and fair dealing continues unabated during the life of the insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer, . . . the adversarial nature of

8

such proceedings may suspend the insurer's obligation to negotiate as a reflection of good faith.'") (quoting *Sanderson v. American Family Mutual Ins. Co.,* 251 P.3d 1213, 1217 (Colo. App. 2010)). Notwithstanding the foregoing, however, the Court finds that there is evidence in the record from which a jury could find that Defendant unreasonably delayed or denied a benefit of the policy.

### B.     Common Law Bad Faith

Defendant argues that Plaintiff has failed to offer any admissible evidence to support her claim for common law bad faith. To succeed on a common law claim for bad-faith denial of an insurance claim, the plaintiff must demonstrate that (1) the insurer's conduct was unreasonable and (2) the insurer knew or recklessly disregarded the fact that its conduct was unreasonable. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1272 (Colo. 1985).

In this case, the record does not indisputably show, as Defendant argues, that Defendant's conduct was reasonable under the circumstances. Genuine issues of material fact remain regarding whether Defendant's selection and reliance on its medical experts met industry standards, whether Defendant's coverage decision was reasonable, and whether Defendant reasonably considered information Plaintiff provided pre-litigation to support her claims. Under these circumstances, summary judgment is not appropriate; reasonableness under the circumstances should be determined by a jury.

Ultimately, viewing the facts in the light most favorable to Plaintiff, the Court finds that genuine issues of material fact exist concerning whether Defendant knew or recklessly disregarded the fact that its conduct was unreasonable when Plaintiff notified

Defendant that she believed the medical evaluations were not done in good faith. Based on the record, it is for a jury to decide whether Defendant acted reasonably under the circumstances. Accordingly, summary judgment is not warranted.

## IV.    CONCLUSION

For the reasons set forth herein, Defendant's Motion for Partial Summary Judgment, ECF 94, is DENIED.

DATED: November 5, 2024

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge