IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02888-RMR-KAS

BRITTANY FRIAR,

   Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

   Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiff's **Motion to Enforce Settlement** [#138] (the "Motion"). Defendant filed a Response [#141][1] and Plaintiff filed a Reply [#142]. The Motion [#138] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See Order Referring Motion* [#144]. The Court has reviewed the briefs, the case file, and the applicable law. For the following reasons, the Court **RECOMMENDS**[2] that the Motion [#138] be **DENIED**.

---

[1] In its Response, Defendant "moves this Court for an Order enforcing a settlement between the parties consistent with Safeco's release[.]" *Response* [#141] at 13. Under D.C.COLO.LCivR 7.1(d), however, "[a] motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." Therefore, the Court disregards the motion contained in Defendant's Response as improper.

[2] In this District, magistrate judges generally resolve motions to enforce settlement agreements on recommendation rather than by order. *See, e.g.*, *Lucier v. Midland Credit Mgmt., Inc.*, No. 14-cv-0847-WJM-MJW, 2014 WL 5784695, at *1 (D. Colo. Nov. 5, 2014) (adopting recommendation to deny motion to enforce); *Siribuor v. UHS of Denver, Inc.*, No. 12-cv-00077-RBJ-KLM, 2012 WL 3590793, at *1 (D. Colo. July 23, 2012), *report and recommendation adopted*, 2012 WL 3590791 (D. Colo. Aug. 20, 2012) (adopting recommendation to grant motion to enforce).

## I.    Background

Plaintiff Brittany Friar was injured in a car crash on August 23, 2019, and subsequently received medical care. *Motion* [#138] at 1; *Response* [#141] at 1. She resolved her claim against the at-fault driver for the driver's insurance policy limit of $100,000. *Response* [#141] at 1. At the time of the crash, Plaintiff had an insurance policy through Defendant Safeco Insurance Company of America which provided for $250,000 in underinsured motorist ("UIM") benefits. *Motion* [#138] at 1; *Response* [#141] at 3. Plaintiff submitted a claim to Defendant for $250,000, and Defendant paid $22,065.80 in UIM benefits to Plaintiff in November 2020. *Motion* [#138] at 1; *Response* [#141] at 2.

Plaintiff, believing that she was entitled to at least the full $250,000 in UIM benefits provided for by the policy, sued, asserting claims for breach of contract, unreasonable delay or denial under Colo. Rev. Stat. §§ 10-3-1115 and 1116, and bad faith breach of insurance contract. *See Compl.* [#5]. On multiple occasions, the parties engaged in settlement negotiations. *See Response* [#141] at 2-5. On September 22, 2025, the parties informed the Court that they had reached a settlement (the purported "Agreement") and that they were "in the process of finalizing the settlement documents[.]" *Notice of Settlement* [#136] at 1.

On October 3, 2025, Plaintiff filed her Motion [#138] to enforce the Agreement, claiming that Defendant was attempting to alter the Agreement's terms. *See generally Motion* [#138]. Defendant responded, agreeing that the Agreement should be enforced, but disagreeing as to certain terms. *See generally Response* [#141]. In reply, Plaintiff reiterates that an enforceable contract was formed through clear and unambiguous terms and that Defendant is attempting to alter those terms. *See generally Reply* [#142].

## II.  Findings of Fact

"In this instance, the [C]ourt need not conduct an evidentiary hearing because there are no material facts in dispute." *Bath v. Equifax Info. Servs. LLC*, No. 18-cv-00572-PAB-NYW, 2019 WL 2375238, at *2 (D. Colo. May 10, 2019), *report and recommendation adopted*, 2019 WL 2372675 (D. Colo. June 5, 2019). The parties' descriptions of the material facts surrounding settlement negotiation do not conflict, and both parties agree that a settlement exists. *See Siribuor v. UHS of Denver, Inc.*, No. 12-cv-00077-RBJ-KLM, 2012 WL 3590793, at *1 (D. Colo. July 23, 2012) (deeming evidentiary hearing unnecessary because the parties' descriptions of the at-issue material facts match); *City & County of Denver v. Adolph Coors Co.*, 813 F. Supp. 1476, 1482 (D. Colo. 1993) (stating that a hearing is unnecessary where the parties do not dispute a settlement's existence); *see also Motion* [#138] at 4-5; *Response* [#141] at 11 ("an enforceable settlement agreement was reached").

The Court recommends that the following facts be accepted as undisputed:

1. On December 19, 2024, Defendant, through counsel, emailed Plaintiff's counsel with a "settlement offer of $252,934.20 *in new money* which, together with the Fisher payment[3] of $22,065.80, reflects the $250,000.00 Underinsured Motorist Limits and an additional $25,000.00 in estimated costs." *Response* [#141] at 2-3 (quoting *Def. Ex. A* [#141-1] at 2 (B.R Ross-Shannon T. Garvey email)) (emphasis added).

2. Defense counsel's December 19, 2024 email to Plaintiff's counsel included a Release with provisions addressing confidentiality, general release, Plaintiff's assumption of full responsibility to pay any and all liens and subrogation claims, and Plaintiff's indemnification of Defendant in connection with any liens or subrogation claims brought. *Def. Ex. A* [#141-1] at 4-5.

---

[3] The term "Fisher payment" comes from *State Farm Mutual Automobile Insurance Company v. Fisher*, 418 P.3d 501, 506 (Colo. 2018), in which the Colorado Supreme Court held that "insurers have a duty not to unreasonably delay or deny payment of covered benefits, even though other components of an insured's claim may still be reasonably in dispute." Thus, a Fisher payment is an insurance company's payment of the undisputed portion of a UIM claim.

3

3. The December 19, 2024 email further stated that if the offer is not accepted by December 31, 2024, Defendant "will serve a Statutory Offer of Settlement/Offer of Judgment for $227,934.20 *in new money* which together with the Fisher payment, reflects the UIM policy limit of $250,000.00." *Id*. (emphasis added).

4. On January 2, 2025, through counsel, Plaintiff rejected Defendant's offer. *Response* [#141] at 3 (citing *Def. Ex. B* [#141-2] (T. Garvey-B. Ross-Shannon email).

5. On January 23, 2025, Defendant emailed Plaintiff with another settlement offer "for the policy limits, *inclusive of the previous Fisher payment*." *Response* [#141] at 3 (citing *Def. Ex. C* [#141-3] at 1 (B.R Ross-Shannon_T. Garvey email)) (emphasis added).

6. On January 29, 2025, Plaintiff rejected Defendant's offer and countered with an "offer[] to settle all claims for $580,000.00." *Def. Ex. C* [#141-3] at 1 (T. Garvey-B.R Ross-Shannon email).

7. During an unsuccessful mediation on August 11, 2025, all Defendant's settlement offers "were inclusive of [its] prior payment of UIM benefits of $22,065.80 and were conditioned upon execution of a release, including indemnification/hold harmless and confidentiality." *Response* [#141] at 5.

8. On Friday, September 19, 2025, by email, Plaintiff offered to "settle this matter, all claim[s], for $375,000.00" and agreed to confidentiality. *Def. Ex. E* [#141-5] (T. Garvey-B. Ross-Shannon email).

9. Plaintiff's September 19, 2025 offer did not reference or otherwise incorporate any terms regarding a release to protect against all potential liens and subrogation claims. *Id*. Additionally, Plaintiff's offer did not articulate that the $375,000.00 demand includes the $22,065.80, which Defendant already paid. *Id*.

10. On Monday, September 22, 2025, Defendant's counsel spoke with Plaintiff's counsel on the phone. *Response* [#141] at 5.

11. At 4:34 p.m. on Monday, September 22, 2025, Plaintiff's counsel emailed Defendant's counsel "to confirm, per our phone call today, Safeco's acceptance of the settlement offer conveyed on Friday." *Pl. Ex. 1* [#138-1] at 2 (T. Garvey-B. Ross-Shannon email).

12. At 5:05 p.m. on September 22, 2025, Defendant's counsel filed a Notice of Settlement [#136], stating that "following conferral with [Plaintiff's counsel]," Defendant "hereby gives notice to the Court of a settlement between Plaintiff and Defendant." Additionally, the Notice stated that "[t]he parties are in the process of finalizing the settlement documents[,] will file a Stipulation for

Dismissal in the near term," and "request that the 8-day jury trial set to commence on October 6, 2025 be vacated." *Notice of Settlement* [#136]

13. On September 26, 2025, Defendant's counsel emailed Plaintiff's counsel a proposed General Release of All Claims, which contained the following language:

   a. "FOR THE SOLE CONSIDERATION OF THREE HUNDRED AND SEVENTY FIVE THOUSAND DOLLARS ($375,000.00), with $22,065.80 previously paid by Safeco Insurance Company of America and $352,934.20 to be paid in new money[.]"

   b. "FOR THE ABOVE CONSIDERATION THE UNDERSIGNED [PLAINTIFF] RELEASES Safeco . . . its employees, . . . agents and assigns, parents and subsidiaries, and all other persons, firms or corporations, from any claims, damages, . . . and injuries which are unknown at this time, but which might reasonably be casually [sic] related to the accident[.]"

   c. "THE UNDERSIGNED FURTHER AGREES to assume full responsibility to pay any and all liens and/or subrogation claims[.]"

   d. "THE UNDERSIGNED FURTHER AGREES to defend, indemnify and hold harmless, the aforementioned released parties . . . as a result of any claims, actions or cause of action, of any nature whatsoever, which may be asserted against the released parties[.]"

   e. "THE UNDERSIGNED FURTHER AGREES that the terms and conditions of the settlement and this Release shall be kept confidential . . . . The undersigned acknowledge and agree that any violation of the confidentiality provision shall be a material breach of this agreement and . . . . [i]f any action at law or in equity is brought to enforce the provisions [of] this confidentiality provision, the breaching party, if any, shall pay the reasonable attorney's fees and costs in enforcing this confidentiality provision."

*Def. Ex. F* [#141-6] at 1-3 (G. Szydlowski-T. Garvey email with proposed General Release).

14. On September 26, 2025, Plaintiff's counsel emailed Defendant's counsel with a revised release that reflected his understanding that the settlement was for $375,000, exclusive of the previously paid $22,065.80. Plaintiff's counsel also objected to the release's inclusion of "numerous material terms that were not part of [Plaintiff's] offer," including the fee-shifting provision regarding confidentiality, indemnification, and release of all claims. *Def. Ex. G* [#141-7] at 2-3.

5

15. On October 2, 2025, Defendant's counsel emailed Plaintiff's counsel to reiterate that the "[$22,065.80] offset was implicit in our discussion and consistent with the historical settlement negotiations in this case." *Id*. at 1. Defendant's counsel also stated that, as articulated on their September 22, 2025 phone call, "the Release would need to protect against all potential liens and subrogation claims[,]" and that when Defendant's counsel insisted that they would need to include such protections in the Release, Plaintiff's counsel responded by saying, "whatever." *Id*. Defendant's counsel further noted that "[t]he confidentiality provision is [Defendant's] standard confidentiality provision[.]" *Id*.

### III.    Legal Standard

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage,* 982 F.2d 1491, 1496 (10th Cir. 1993). "Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (citing *United States v. McCall,* 235 F.3d 1211, 1215 (10th Cir. 2000)). "In Colorado, whether negotiations are sufficiently definite and final to create a binding contract is to be decided by the finder of fact." *Id*. at 1062. (citing *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 887 (Colo. 1986) (en banc)). A settlement agreements' terms "must be clear, unambiguous, and capable of enforcement." *Coors*, 813 F. Supp. at 1479 (citations omitted).

"[F]or a settlement to be binding and enforceable, there must be a 'meeting of the minds' as to its terms and conditions." *Email On Acid, LLC v. 250ok, Inc.*, No. 19:cv-03496-RMR-KLM, 2023 WL 2813265, at *2 (D. Colo. Apr. 6, 2023) (citing *H.W. Houston Constr. Co. v. Dist. Ct.*, 632 P.2d 563, 565 (Colo. 1981). "Before the Court can find that an agreement has not been reached, 'it must appear that further negotiations are not required to work out important and essential terms.'" *Id*. (quoting *Joseph Brazier, LTD. v. Specialty Bar Prod.'s Co.*, No. 06-cv-01416-WDM-KLM, 2009 WL 690308, at *2 (D. Colo.

6

Mar. 12, 2009) (without holding an evidentiary hearing, finding no enforceable settlement agreement even though the parties agreed that they entered into an agreement and the underlying litigation had been resolved). "A writing is not necessary to create a binding settlement agreement," and the parties' contemplation of "preparing a written agreement does not necessarily render a verbal agreement invalid[.]" *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001).

## IV.     Analysis

### A.     Parol Evidence Rule and Extrinsic Evidence

At the outset, the Court addresses the parties' arguments regarding whether the "parol evidence rule"[4] applies to this scenario. Plaintiff objects to Defendant's reliance on "parol evidence" on grounds that its use contradicts Colorado Supreme Court authority that "[a] court should only admit parol evidence when the contract between the parties is so ambiguous that their intent is unclear." *Motion* [#138] at 6 (quoting *Boyer v. Karakehian*, 915 P.2d 1295, 1299 (Colo. 1996)); *see also Reply* [#142] at 2-3. In her view, the offer she extended to Defendant, which she argues Defendant accepted, "was clear and unambiguous--$375,000 to confidentially settle the claims asserted in the lawsuit." *Motion* [#138] at 6; *see also Reply* [#142] at 3 (arguing that "the parol evidence rule prohibits prior negotiations or assumptions from varying" the "clear and unambiguous terms" in the parties' agreement).

The Court disagrees that the parol evidence rule applies here. The parol evidence rule only excludes extrinsic evidence when the parties have executed an unambiguous

---

[4] The parol evidence rule "seeks to preserve integrity of written agreements by refusing to permit contracting parties to attempt to alter import of their contract through use of contemporaneous oral discussions." *Parol Evidence Rule*, BLACK'S LAW DICTIONARY (6th abridged ed. 2001).

and integrated *written* contract. *See* 6 CORBIN ON CONTRACTS § 25.3 (2026) ("[W]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing."). Plainly stated, the parol evidence rule "applies only to fully integrated contracts." *Hildebrand v. New Vista Homes II, LLC*, 252 P.3d 1159, 1165 (Colo. App. 2010); *see also, e.g.*, *1881 Extraction Co. LLC v. Kiinja Corp.*, 660 F. Supp. 3d 1059, 1067 n.2 (D. Colo. 2023) (citing this principle approvingly). Relatedly, "evidence of the parties' conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement are admissible to clarify the intent and purpose of the parties." *I.M.A.*, 713 P.2d at 888 (citations omitted).

## B.    Motion to Enforce Settlement

Next, the Court must evaluate whether the Agreement constitutes a valid and enforceable agreement to settle this case. "Parties must agree on all material terms to create a valid settlement agreement." *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001). "While parties may definitely agree on some issues, the absence of agreement on other material issues prevents the formation of a binding contract." *Id*. Thus, the Court first considers whether the purported agreement to settle this matter, all claim[s], for $375,000.00,"[5] along with Plaintiff's "agree[ment] to confidentially" included all the materials terms.

---

[5] The parties disagree on what their agreement to settle "for $375,000" means. Plaintiff argues that the parties agreed to settle this case for $375,000 *exclusive* of any prior payments, while Defendant argues that $22,065.80 paid by Defendant to Plaintiff pre-litigation must be offset against this amount. *See Response* [#141] at 10; *Reply* [#142] at 8. Curiously, however, they both

"What constitutes a material term of a contract generally is determined from the intention of the parties as disclosed by the surrounding facts." *Burke v. Lola's Rescue*, No. 24CA1315, 2025 WL 3564141, at *3 (Colo. App. Dec. 11, 2025), *cert. denied*, No. 26SC59, 2026 WL 1102524 (Colo. Apr. 20, 2026). "Parties must also mutually assent to sufficiently definite and certain terms." *Id*. at *4. A binding contract does not exist if "further negotiations are required to work out important and essential terms." *DiFrancesco*, 39 P.3d at 1248.

"Settlement value is not the only material term of a settlement contract." *Glover v. Midland Credit Mgmt.*, No. CIV-20-419-R, 2020 WL 12787815, at *3 (W.D. Okla. Dec. 17, 2020). Therefore, the Court need not presently decipher what the parties' agreement to settle "for $375,000" means. Instead, the Court considers whether the parties' purported agreement to settle "for $375,000" included all material terms. To do that, the Court considers the surrounding facts, which the parties do not dispute.

The parties' settlement negotiations began in earnest on December 19, 2024, when Defendant extended a settlement offer. *Facts*, ¶ 1. That settlement offer included a draft "General Release of All Claims," which contained several provisions that articulated what Plaintiff would provide Defendant in exchange for the settlement payment. *Facts*, ¶ 2; *Def. Ex. A* [#141-1] at 4-5. Specifically, the draft Release contemplated that Plaintiff would:

---

agree that they reached a settlement. The parties' competing understandings and their conflicting intent on the settlement amount present a disputed fact issue, which would require an evidentiary hearing. Further, "when parties to a contract ascribe different meanings to a material term of a contract, the parties have not manifested mutual assent, no meeting of the minds has occurred, and there is no valid contract." *Sunshine v. M.R. Mansfield Realty, Inc.*, 575 P.2d 847, 849 (Colo. 1978). Nevertheless, for reasons discussed in this Recommendation, the record permits the Court to adjudicate the Motion [#138] without a hearing.

- Release Defendant, its employees, administrators, agents and assigns, parents and subsidiaries, etc. from any claims, damages, and injuries which are causally related to the underlying vehicle accident.

- Assume full responsibility to pay all liens and/or subrogation claims, which are attributable to Plaintiff's injuries and damages resulting from the accident.

- Defend, indemnify, and hold Defendant harmless in connection with any claims or causes of action which third parties may later assert against Defendant as a result of the settlement or which may otherwise be related to any liens or subrogation claims attributable to Plaintiff's injuries and damages resulting from the accident.

- Agree to maintain the confidentiality of the settlement's and release's terms and conditions, absent required disclosure under the law.

- Agree to provision that attorney's fees and costs incurred by efforts to enforce confidentiality would be paid for by breaching party.

*Facts*, ¶ 2; *Def. Ex. A* [#141-1] at 4-5. Defendant's communication of the December 19, 2024 settlement offer expressly stated that the offer was made "*in exchange for execution of the Release*[.]" *Def. Ex. A* [#141-1] at 2. That settlement was unsuccessful. *Facts*, ¶ 4. Subsequent communications focused on the settlement amount, not on release provisions. *See Response* [#141] at 3-4.

Then, during an unsuccessful mediation on August 11, 2025, Defendant's settlement offers were conditioned upon execution of a release, which would include indemnification and confidentiality provisions. *Facts*, ¶ 7.

About a month later, settlement communications resumed with Plaintiff's counsel's offer to settle for "$375,000". *Facts*, ¶ 8. That offer included an agreement to confidentiality, which demonstrates Plaintiff's counsel's awareness that settlement was contingent upon non-monetary terms, which had not yet been agreed upon. *See id*. The parties then spoke on the phone on September 22, 2025. *Facts*, ¶ 10. During that call, Defendant's counsel explained that settlement payment was contingent on Plaintiff's

execution of a release that protected against all potential liens and subrogation claims. *Facts*, ¶ 15.[6] Four days after the parties reached a purported settlement, Defendant's counsel emailed "the proposed release". *Def. Ex. F* [#141-6] at 1; *Facts*, ¶ 13. That *proposed* release contained the same release provisions counsel had previously circulated; namely, general release, indemnification, assumption of full responsibility to pay all liens and subrogation claims, and confidentiality with an attorneys' fee clause related to enforcement. *Facts*, ¶ 13. A few hours after defense counsel transmitted the proposed release, Plaintiff's counsel responded with his modifications to the release, depicted in a red-lined document that struck a majority of Defendant's proposed release provisions. *Facts*, ¶ 14; *Def. Ex. G* [#141-7] at 4-5. Defense counsel responded six days later, recapping the parties' September 22, 2025 settlement call in which counsel explained why Defendant needed certain release provisions. *Facts*, ¶ 15; *Def. Ex. G* [#141-7] at 1. In counsel's retelling of the call, he described Plaintiff's counsel's initial pushback to the indemnification provision in the proposed release, followed by "Whatever."

To determine whether Defendant intended to be bound by an agreement before a written agreement's execution, courts consider four factors: (1) "whether the parties have stated an intention not to be bound absent an executed writing"; (2) "whether one party has performed partially and the other party has accepted such performance"; (3) "whether there are no issues left to be negotiated such that the signing of the contract is merely ministerial"; and (4) "whether the agreement concerns complex matters such that a written

---

[6] Plaintiff does not refute Defendant's recounting of the September 22, 2025; rather, Plaintiff argues that the parol evidence rule precludes the Court's consideration of it. *See Reply* [#142] at 1-3. The Court, however, disagrees for reasons discussed at the outset of the Court's analysis.

agreement would be the norm, not the exception." *Coors*, 813 F. Supp. at 1481 (drawing

factors from *PDL Vitari Corp. v. Olympus Indus., Inc.*, 718 F. Supp. 197, 206-07 (S.D.N.Y.

1989)).

Here, the Court finds that the first factor weighs against enforcement. The

surrounding facts demonstrate that Defendant did not intend to be bound absent a written

agreement, and Plaintiff should have known that. Throughout the course of negotiations,

Defendant consistently raised the issue of a release. *See Facts*, ¶¶ 2, 7, 13, 15. Even if

Defendant assented to Plaintiff's $375,000 settlement demand, Defendant's unrebutted

summary of the September 22, 2025 settlement call demonstrates that Defendant's

acceptance was conditioned on the execution of a mutually agreeable release. Defense

counsel's circulation of a *proposed* release four days after the parties' settlement call

demonstrates that the terms contained in the release had not been agreed upon.

Therefore, "further negotiations [were] required to work out important and essential

terms"; thus, "there can be no binding contract." *DiFrancesco*, 39 P.3d at 1248.

The second factor—a party's partial performance or acceptance of performance—

also weighs against enforcement. While Defendant notified the Court that the parties had

reached a settlement and were finalizing settlement documents, the record contains no

evidence that Defendant made any payment to Plaintiff or that Plaintiff took any steps to

dismiss the case.

The third factor—existence of further issues to negotiate and ministerial nature of

agreement's execution—also weighs against enforcement. Although the parties agreed

12

to a $375,000[7] sum, they had not reached resolution on the release's language, including an indemnification provision. The surrounding facts demonstrate that the indemnification provision, among others, was a material term to Defendant. The indemnification provision would protect Defendant from future financial exposure in the event a third party later demanded reimbursement for accident-related costs. Defendant unquestionably has a need to protect itself from having to pay twice for accident-related costs.

The facts surrounding the Agreement reflect that, at least as early as December 19, 2024, Defendant clearly expressed to Plaintiff a need for indemnification against all potential liens and subrogation claims in order to settle the case, and Defendant repeated this demand throughout negotiations, including during his September 22, 2025 phone call with Plaintiff's counsel. Based on the parties' negotiations, Plaintiff had reason to know that Defendant's offer was conditioned on specific release terms, including the indemnification provision. *Cf. Zimmerman v. McColley*, 826 N.E.2d 71, 78 (Ind. Ct. App. 2005) (enforcing agreement as a lump sum payment where offeree had no reason to know, based on prior offers, that the offer was conditioned on a structured settlement provision).

In response to that repeated demand for indemnification, Plaintiff's counsel apparently responded with "whatever." *Id*. "Whatever" is not assent. It is ambiguity. Thus, the indemnification provision, a material term, was left open and uncertain. That openness and uncertainty yielded no enforceable agreement. *See, e.g.*, *Glover v. Midland Credit Mgmt.*, No. CIV-20-419-R, 2020 WL 12787815, at *3 (W.D. Okla. Dec. 17, 2020) (denying

---

[7] Whether Defendant's $22,065.80 *Fisher* payment to Plaintiff should offset the $375,000 sum is immaterial to the Court's finding that the parties did not reach agreement on material non-monetary terms.

motion to enforce settlement where the parties agreed to execute a release, but "the parties never mutually agreed on the terms of release, and thus, there was no meeting of the minds to form the contract."); *McKinzy v. BNSF Ry. R.R.*, No. CIV.A. 08-2365-CM, 2009 WL 1798445, at *2 (D. Kan. June 24, 2009) (same); *cf. Camara v. Camara*, 998 A.2d 1058, 1062-63 (Vt. 2010) (rejecting argument that belated addition of indemnification thwarted an enforceable agreement where wife had unconditionally accepted the husband's proposed terms that were labeled "Total Settlement", she never attempted to withdraw acceptance, and her acceptance was never conditioned on indemnification). Therefore, the agreement's execution was not ministerial or a mere formality.

Finally, the fourth factor—whether the agreement is of the kind that is typically written—also weighs against enforcement. "[T]his type of agreement—settlement of a lawsuit and mutual releases—is generally the type that is reduced to writing." *Joseph Brazier, Ltd. v. Specialty Bar Prods. Co.*, No. 06-cv-01416-WDM-KLM, 2009 WL 690308, at *4 (D. Colo. Mar. 12, 2009). Therefore, the Court concludes that the parties did not reach a binding, enforceable agreement.

This conclusion aligns with *Joseph Brazier, Ltd.*, where the district judge determined that no enforceable agreement existed because the parties failed to reach agreement on the material terms. In that case, the parties reached a settlement whereby one side would pay a sum certain, dismiss all claims with prejudice, and sign a release covering the relevant time period in exchange for identified deliverables from the other party. 2009 WL 690308, at *1. The offer letter containing that settlement proposal was expressly "conditioned upon the execution of a mutually agreeable settlement agreement incorporating the intent of the settlement terms listed." *Id.* (quoting offer letter). The letter's

14

recipient responded by confirming that the offer letter contained the parties' "agree[ment] in principle" and the "material terms," but added "clarifications," including that the parties will exchange general mutual releases, they will address the non-disclosure issue in the settlement agreement, and that a settlement document will "more fully and formally memorialize the settlement agreement." *Id*. at *1-2 (quoting clarification letter).

After several months passed and the parties still had not executed an agreement because of disputes over the language, the plaintiff suggested a return to the original offer letter's terms. *Id*. at *2. Though both sides agreed to return to the original terms, they remained at odds over the terms to memorialize in the written agreement. *Id*. Applying the four factors from *Coors*, the district judge concluded "no agreement was ever reached" because "each proposed settlement agreement acted as a separate offer and, as no version was ever agreed upon, there was never an acceptance such that the parties because bound by any of the proposed written agreement[.]" *Id*. at *4.

This conclusion also aligns with *DiFrancesco v. Particle Interconnect Corp.*, where the Colorado Court of Appeals determined that the parties failed to reach agreement on all material terms. 39 P.3d at 1250. In *DiFrancesco*, a patent dispute, the parties discussed settlement during a break in a defendant's deposition. *Id*. at 1245. The parties reached an agreement, with the understanding that written settlement documents would be prepared. *Id*. The appellate court determined that the trial court erred in enforcing the agreement because the "agreement was preliminary and conditioned on preparation of a formal written document." *Id*. at 1247. Though the parties reached a preliminary agreement, several material terms were unaddressed: the license agreement's scope, prevention of the plaintiffs' interference with licensees, the defendant's right to contact

licensees, and the royalty rate. *Id*. at 1248. Additionally, the parties had tabled further discussion on certain disagreements, and they reached no agreement on how to calculate royalties. *Id*. at 1249. The parties' agreement to flesh out those details and to "come up with precise wording" meant that no enforceable agreement had been reached. *Id*.

For these reasons, the Court **recommends** that the Plaintiff's Motion to Enforce Settlement [#138] be **denied.**

### V.    Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that Plaintiff's Motion to Enforce Settlement [#138] be **DENIED**.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

16

Dated: July 30, 2026                                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge